NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

KENT DREW, *Appellant.*

No. 1 CA-CR 14-0451
FILED 9-10-2015

Appeal from the Superior Court in Maricopa County
No.   CR 2013-105422-001
The Honorable Jeanne M. Garcia, Judge

**CONVICTIONS AFFIRMED; SENTENCE MODIFIED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Terry Reid
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Margaret H. Downie delivered the decision of the Court, in which Judge Kenton D. Jones and Judge Jon W. Thompson joined.

---

**D O W N I E**, Judge:

**¶1**　　　　Kent Drew timely appeals his convictions for armed robbery, aggravated assault, and misconduct involving weapons in violation of Arizona Revised Statutes ("A.R.S.") sections 13-1203(A)(1), -1204(A)(2), -1902, -1904, and -3102(A)(4).  Pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969), Drew's counsel searched the record, found no arguable question of law, and asked that we review the record for reversible error.  *See State v. Richardson*, 175 Ariz. 336, 339, 857 P.2d 388, 391 (App. 1993).  Drew was given the opportunity to file a supplemental brief *in propria persona*; he has not done so.  For the following reasons, we affirm Drew's convictions but modify his sentence to reflect entitlement to 171 days of presentence incarceration credit rather than 170 days.

### FACTS AND PROCEDURAL HISTORY[1]

**¶2**　　　　A.F. bought smart phones from Drew on several occasions.  On September 15, 2012, Drew called to say that he had 20–30 phones to sell.  The men met in Drew's car in the parking lot of A.F.'s apartment complex and discussed the available phones and what A.F. was willing to pay.  A.F. gave Drew cash, but when A.F. reached in the backseat to "grab the bag with the phones in it," Drew ordered him out of the car.  Drew also pulled out a gun.  A.F. said, "Are you really about to rob me, are you serious."  Drew responded, "You know what time it is."[2]  A.F. lunged at Drew and attempted to redirect the gun.  During the altercation, A.F. was shot in the calf and foot.

---

[1]　　"We view the evidence in the light most favorable to sustaining the verdicts and resolve all inferences against appellant."  *State v. Nihiser*, 191 Ariz. 199, 201, 953 P.2d 1252, 1254 (App. 1997).

[2]　　A.F. testified that in "street lingo," Drew's statement basically meant "I'm about to rob you."

¶3        The State charged Drew with armed robbery, aggravated assault, and misconduct involving weapons.  A jury trial ensued.  At the conclusion of the State's case-in-chief, Drew moved for a judgment of acquittal pursuant to Arizona Rules of Criminal Procedure, Rule 20.  The court denied the motion.  The jury returned a guilty verdict on all charges. Drew asked to be remanded into custody immediately following the verdict and waived his right to be present during the aggravation hearing.

¶4        At the aggravation hearing, the jury found that the State had proven the following aggravating factors for the armed robbery and aggravated assault counts: (1) the offenses involved the infliction or threatened infliction of serious physical injury; (2) the offenses caused physical, emotional, or financial harm to the victim; (3) the counts were dangerous offenses, meaning an offense involving the discharge, use, or threatening exhibition of a deadly weapon or dangerous instrument or the intentional or knowingly infliction of serious physical injury on another person; (4) Drew committed the offenses as consideration for the receipt or in the expectation of the receipt of anything of pecuniary value; and (5) Drew was previously convicted of a felony within the ten years immediately preceding the date of the offense.[3] The jury found the fifth aggravating factor also applied to the misconduct involving weapons offense.

¶5        At sentencing, the court found several mitigating factors, but determined the aggravating factors tended to outweigh them. It also found Drew had been convicted of five prior felony offenses.  The court thus imposed sentences greater than the presumptive: twelve years for armed robbery; nine years for aggravated assault; and six years for misconduct involving weapons. Each sentence was to run concurrently. The court awarded Drew 170 days of presentence incarceration credit.

**DISCUSSION**

¶6        We have read and considered the brief submitted by Drew's counsel and have reviewed the entire record.  *Leon*, 104 Ariz. at 300, 451

---

[3]        Under A.R.S. § 13-701(D)(11), it is the trial court's role — not the jury's — to find an aggravating circumstance of a prior felony conviction within ten years.  The error was not prejudicial or fundamental here, however, as the State introduced a certified affidavit establishing the conviction and Drew admitted to another qualifying conviction at sentencing.

P.2d at 881. With the exception of presentence incarceration credit, we find no reversible error. All of the proceedings were conducted in compliance with the Rules of Criminal Procedure, and the sentences imposed were within the statutory range. Drew was present at all critical phases of the proceedings and represented by counsel. The jury was properly impaneled and instructed. The jury instructions were consistent with the offenses charged. The record reflects no irregularity in the deliberation process.

## I. *Batson* Challenge

¶7 During jury selection, Drew raised a *Batson* challenge after the State struck Juror 3 — the only potential juror who was black.[4] *See Batson v. Kentucky*, 476 U.S. 79, 80 (1986) ("Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race . . .."). The trial court rejected the challenge.

¶8 We employ a three-step process in determining whether a peremptory strike violates *Batson*: (1) the opposing party must make a *prima facie* showing of discrimination; (2) the proponent must offer a race-neutral basis for the strike; and (3) the opponent must persuade the court that the proffered reason is a pretext and the strike was "actually based on race." *State v. Lucas*, 199 Ariz. 366, 368, ¶ 7, 18 P.3d 160, 162 (App. 2001). When considering a *Batson* challenge, we defer to the trial court's findings of fact unless clearly erroneous, but we review the court's application of the law *de novo*. *Lucas*, 199 Ariz. at 368, ¶ 6, 18 P.3d at 162. To rebut a *prima facie* showing of discrimination, the State must give "a clear and reasonably specific explanation" of its "legitimate reasons" for exercising a peremptory strike. *Purkett v. Elem*, 514 U.S. 765, 768 (1995).

¶9 The prosecutor offered the following explanation for striking Juror 3:

> I struck number 3 for multiple reasons. One, I'm concerned for his kids, his six and four year old who he has no one to pick up after school. He repeatedly said he doesn't have

---

[4] Drew also moved to strike the entire jury panel because the pool of sixty included only one black member. He did not argue or show, however, "that the disparity [was] a result of systematic exclusion in the jury selection process." *Randolph v. People of the State of Cal.*, 380 F.3d 1133, 1140 (9th Cir. 2004); *see Duren v. Missouri*, 439 U.S. 357, 364 (1979).

anyone to pick them up and CPS would be called if he didn't pick them up he said by 2:45 or 3:00 p.m.  The other reasons include he has lots of family members in the Department of Corrections.  His wife works for a criminal defense firm. He doesn't know which one.  He says he talks to her a lot about what she does presumably criminal defense work. The state did not strike him based on race. The reasons we struck him is mainly because he doesn't have any one to pick up his kids. I think that's going to be distracting to him.

Drew did not offer any reasons why the State's explanation was pretextual.  The trial court thus appropriately rejected the *Batson* challenge.  *See State v. Newell,* 212 Ariz. 389, 401, ¶ 54, 132 P.3d 833, 845 (2006) (the State meets its burden by offering a "facially valid explanation" for the challenge).

## II.     Rule 20 Motion

**¶10**          A judgment of acquittal is appropriate only when there is "no substantial evidence to warrant a conviction."  Ariz. R. Crim. P. 20(a). Substantial evidence is such proof that "reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt."  *State v. Mathers*, 165 Ariz. 64, 67, 796 P.2d 866, 869 (1990).  "Reversible error based on insufficiency of the evidence occurs only where there is a complete absence of probative facts to support the conviction."  *State v. Soto-Fong*, 187 Ariz. 186, 200, 928 P.2d 610, 624 (1996).

**¶11**          A.F. testified that Drew took several thousand dollars in cash from him at gunpoint and that he was shot in the resulting struggle. Drew's ex-girlfriend testified that Drew told her he robbed A.F. and shot him.  A police officer and two apartment managers testified about the content of a surveillance video overlooking the parking lot where the men met.[5]  Their testimony corroborated A.F.'s version of events.  The State also introduced an affidavit certified by the clerk of the Maricopa County

---

[5]     Apartment management promised to give officers a copy of the footage but never did so, and the content was deleted.  Based on the unavailability of the video, the trial court gave a *Willits* instruction to the jury.  *See State v. Willits*, 96 Ariz. 184, 191, 393 P.2d 274, 279 (1964) (adverse-inference jury instruction appropriate when the State loses or destroys evidence that could have been useful to a defense).

Superior Court establishing that Drew had a prior conviction and had not had his right to carry a gun reinstated.

¶12        Based on the foregoing, the State presented substantial evidence that Drew was guilty of: (1) armed robbery by forcefully using a deadly weapon with the intent to coerce A.F. to surrender cash from his person and against his will, *see* A.R.S. §§ 13-1902, -1904; (2) aggravated assault, because Drew was at least reckless when he physically injured A.F. with a deadly weapon, *see* A.R.S. §§ 13-1203(A)(1), -1204(A)(2); and (3) misconduct involving weapons, because Drew knowingly possessed a gun while he was a prohibited possessor, *see* A.R.S. § 13-3102(A)(4).

## III.    Presentence Incarceration Credit

¶13        "All time actually spent in custody pursuant to an offense until the prisoner is sentenced to imprisonment for such offense shall be credited against the term of imprisonment."  A.R.S. § 13–712(B).  When calculating presentence incarceration credit, a defendant is entitled to a full day of credit for any partial day spent in custody.  *State v. Carnegie*, 174 Ariz. 452, 454, 850 P.2d 690, 692 (App. 1993).  When the date sentence is imposed serves as the first day of a defendant's sentence under A.R.S. § 13-712(A) that date does not also count for presentence credit under A.R.S. § 13-712(B).  *See State v. Lopez*, 153 Ariz. 285, 285, 736 P.2d 369, 369 (1987) (interpreting A.R.S. § 13-709, which is now A.R.S. § 13-712).  Applying these standards, Drew was entitled to 171 days of presentence incarceration credit.

¶14        Presentence incarceration credit under A.R.S. § 13–712(B) is mandatory and the sentencing court has no discretion in the matter.  *See State v. Williams*, 128 Ariz. 415, 416, 626 P.2d 145, 146 (App. 1981).  A sentence that does not comply with a mandatory sentencing statute is illegal.  *State v. Joyner*, 215 Ariz. 134, 137, ¶ 5, 158 P.3d 263, 266 (App. 2007).  Because our calculation reveals Drew was entitled to 171 days of presentence incarceration credit, not 170, we modify the sentencing order to so reflect.

## CONCLUSION

¶15        We affirm Drew's conviction but modify his sentence to award him 171 days of presentence incarceration credit.  Counsel's obligations pertaining to Drew's representation in this appeal have ended.  Counsel need do nothing more than inform Drew of the status of the appeal and his future options, unless counsel's review reveals an issue appropriate for submission to the Arizona Supreme Court by petition for

review.  *State v. Shattuck*, 140 Ariz. 582, 584–85, 684 P.2d 154, 156–57 (1984).  On the court's own motion, Drew shall have thirty days from the date of this decision to proceed, if he desires, with an *in propria persona* motion for reconsideration or petition for review.



Ruth A. Willingham · Clerk of the Court
FILED : ama